UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>RANDAL KENT HANSEN<br><br>Defendant. | 4:13-CV-40053-KES<br><br>ORDER DENYING MOTION<br>FOR COMPASSIONATE RELEASE |

Defendant, Randal Kent Hansen, moves for a sentence reduction under 18 U.S.C. § 3583(c)(1)(A). Docket 105. The United States opposes the motion. Docket 110. For the following reasons, the court denies Hansen's motion.

**BACKGROUND**

In 2014, Hansen was found guilty after a jury trial of 29 counts of wire and mail fraud and conspiracy to commit wire or mail fraud. Docket 54. He was sentenced on May 21, 2014, to 108 months of imprisonment, 3 years of supervised release, and restitution in the amount of $17,514,258.89. Docket 77. Hansen has now filed a motion for compassionate release based on the recently enacted First Step Act (FSA). Docket 105. The FSA permits defendants to move a sentencing court for modification of sentence after the defendant has fully exhausted all administrative rights. 18 U.S.C. § 3582(c)(1)(A). Both parties agree that Hansen has exhausted all administrative rights.

**ANALYSIS**

I.  **Compassionate Release under FSA**

In 2018, Congress passed the FSA. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. Compassionate release provides a narrow path for defendants in "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community[1], as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13.

Congress did not define what constitutes "extraordinary and compelling," but did state that "[r]ehabilitation of the defendant alone" is not sufficient. 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios. U.S.S.G. § 1B1.13 cmt. n.1(A)-(D). After the FSA was passed, the Sentencing Commission did not update its policy statement because the Sentencing

---
[1] The United States does not claim that Hansen is a danger to the safety of any other person or to the community.

2

Commission has not had a quorum. As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 2019 WL 4942051, at *2 (S.D. Iowa Oct. 8, 2019). It is clear that Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. *See* 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A). But the Commission has not addressed whether the policy statement from the old regime is applicable to the new statute nor has it adopted a new policy statement. This court need not determine whether it is bound to apply the criteria in U.S.S.G. § 1B1.13 cmt. n.1(A)-(D) or whether it has the discretion on its own to determine whether any extraordinary and compelling reasons other than those delineated in the Sentencing Guidelines warrant granting relief, because under either scenario, Hansen would not be entitled to relief.

II.   **Hansen's Alleged "Extraordinary and Compelling" Reasons**

Hansen states that he is 71 years of age and has served over 55 percent of his sentence. Docket 105 at 3. His medical records show a history of: hyperlipidemia, severe depression, hypermetropia, hearing loss, adjustment disorder, and chronic sinusitis. Docket 105-1 at 2. Additionally, he claims to suffer from arthritis in his hands and back, deteriorating vision, allergies, and chronic infections of both the prostrate and the sinuses. Docket 110 at 4. He

3

states he has had three surgeries, two biopsies, broken teeth, and he is starting to suffer from PTSD and short-term memory loss. *Id.* Hansen takes multiple medications daily. Docket 105 at 4. He also has a 70-year old spouse at home who has suffered a heart attack. *Id.*

The Bureau of Prisons' Medical Director, relying on Hansen's medical providers, concluded that Hansen's medical conditions were well-controlled and "he is able to ambulate without adaptive equipment and has no work restrictions." Docket 110-3. The Medical Director found that "Mr. Hansen does not have any age related issues that impair his ability to function in a correctional environment." *Id.* He specifically found that Hansen's condition is not terminal and "[h]e is independent with his ADLs [Activities of Daily Living] and IADLs [Instrumental Activities of Daily Living], and is not experiencing deteriorating mental or physical health that substantially diminishes his ability to function in a correctional facility." *Id.* The Clinical Director also reviewed all the available medical records of Hansen and reached a similar conclusion. *See* Docket 110-6.

### III. Application of Standards to Hansen's Reasons

While Hansen describes pain and discomfort and several chronic illnesses, none of the issues he raises are without treatment possibilities. His issues are not nearly as severe as the health issues contemplated under the notes to the Sentencing Guidelines, which list "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia" as types of qualifying medical conditions. U.S.S.G. § 1B1.13 cmt.

4

n.1(A)(i). None of Hansen's self-reported or medically diagnosed ailments approach this level of seriousness. Even if the Sentencing Guidelines do not apply, the court finds that Hansen's conditions do not rise to the level of extraordinary and compelling reasons for early release.

Furthermore, it appears that Hansen is able to provide self-care within the correctional facility. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). There is no evidence in the record to indicate that Hansen is unable to care for himself.

Hansen's brief also mentions that his wife is having medical issues. Hansen did not attach any medical records related to her, however, and his statements alone are not sufficient to meet his burden.

### IV. Section 3553(a) factors

Even assuming Congress intended to expand the use of compassionate release with the First Step Act, the 18 U.S.C. § 3553(a) factors present at sentencing have not changed. Considering the nature and circumstances of the offense and the history and characteristics of Hansen, the court continues to find that a sentence of 108 months in prison is just and fair under the totality of the circumstances. Even if a more expansive definition of "extraordinary and compelling reasons" under the First Step Act applied, the court would deny Hansen's motion for a sentence reduction.

## CONCLUSION

Based on the foregoing, and on all the files, records and proceedings herein, it is

ORDERED that Hansen's motion for compassionate release (Docket 105) is denied.

Dated this 27th day of December, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE