UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RANDAL KENT HANSEN,<br><br>Defendant. | 4:13-CR-40053-01-KES<br><br><br>ORDER DENYING MOTION TO REINSTATE COMPASSIONATE RELEASE |

Defendant, Randal Kent Hansen, moves to reinstate compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 124. Plaintiff, the United States of America, opposes the motion. Docket 127. For the following reasons, the court denies defendant's motion to reinstate compassionate release.

## BACKGROUND

In 2014, Hansen was found guilty after a jury trial of 29 counts of wire and mail fraud and conspiracy to commit wire or mail fraud. Docket 54. He was sentenced on May 21, 2014, to 108 months of imprisonment, 3 years of supervised release, and restitution in the amount of $17,514,258.89. Docket 77. Hansen was incarcerated at Federal Prison Camp (FPC) Duluth in Duluth, Minnesota. Docket 126 at 1104. On April 10, 2020, the Bureau of Prisons (BOP) transferred Hansen to home confinement. *Id.* at 1099. His current anticipated release date is May 1, 2022. *Id.* at 1108.

Hansen is 72 years old. *Id.* at 1. Hansen's health conditions include hyperlipidemia and depressive disorder. *Id.* at 21. According to BOP medical

records, both conditions are considered at treatment goal. *Id.*

On March 25, 2020, while Hansen was incarcerated at FPC Duluth, Hansen filed a pro se motion with the court for relief under the First Step Act. Docket 116. On March 27, 2020, before the United States filed a response, the court granted the motion and ordered the BOP to transfer Hansen to home confinement to serve the rest of his sentence. Docket 117. On April 6, 2020, the United States filed a motion for reconsideration of the court's order granting motion for compassionate release. Docket 118. The court granted the United States's motion because Hansen did not exhaust his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). Docket 119. The court's previous order granting motion for compassionate release was vacated. *See* Docket 117.

On July 22, 2020, after the BOP transferred Hansen to home confinement, Hansen filed a pro se motion to reinstate the compassionate release previously granted by the court. Docket 124; *see* Docket 120 (Notice of Change of Address by Hansen). Hansen argues that he exhausted his administrative remedies before he filed his motion for compassionate release (Docket 116). Docket 124 at 1-2. Hansen alleges that the FPC Duluth Warden stated that "he [was] verbally denying all request[s] of all inmates and no one need[ed] [to] request a further denial or file any motions with him." *Id.* at 1. The United States opposes the motion. Docket 127.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not

modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. § 603. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

In his original motion for compassionate release, Hansen argued that the COVID-19 pandemic, his age, his adverse health conditions, and his close proximity to inmates at FPC Duluth justified compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 116 at 1-3. Hansen requested an immediate release from custody. *Id.* at 3. In his most recent motion, Hansen asks the court to reinstate the compassionate release that the court previously granted. Docket 124 at 2.

## I. Administrative Exhaustion

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

Hansen argues that he exhausted his administrative remedies because the warden at FPC Duluth verbally told all inmates that he was denying all requests for compassionate release. Docket 124 at 1. Hansen alleges that based on this statement from the warden, Hansen could directly file with the court. *Id.* The court concludes, however, that it does not need to opine on whether Hansen exhausted his administrative remedies because even if the administrative exhaustion requirements have been met and Hansen's request may be considered, Hansen is still not eligible for compassionate release under the "extraordinary and compelling reasons" provision.

## II. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant compassionate release based on "extraordinary and compelling reasons[.]" Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to

4

promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* Additionally, there is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D).

After the FSA was passed, the Sentencing Commission did not update its policy statement because the Sentencing Commission has not had a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown,* 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020). It is clear that Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions

5

"consistent with applicable policy statements" from the Sentencing Commission. *See* 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A). But the Commission has not addressed whether the policy statement from the old regime is applicable to the new statute nor has it adopted a new policy statement. Because the First Step Act changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 578-80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."); *see also United States v. Frith*, 2020 WL 4229160, at *2 (D.N.D. July 23, 2020).

Assuming that the policy statements continue to apply to compassionate release motions brought under the amended FSA, Hansen has failed to show that his current circumstances rise to extraordinary and compelling reasons justifying early release. In his motion for compassionate release, Hansen argued that his declining health, his depressed immune system, and his proximity to other inmates put him at greater risk of severe illness and death

6

from COVID-19. Docket 116 at 1-3. Hansen requested "immediate release" so he could rejoin his family and wife. *Id.* at 3. In his motion to reinstate compassionate release, Hansen reiterates that his age and the presence of COVID-19 at FPC Duluth justify compassionate release. Docket 124 at 2.

Hansen's proffered reasons for compassionate release are now moot. He has been placed on home confinement by the BOP. *See* Docket 126 at 1099; Docket 120. He is no longer housed with, exposed to, or in close contact with "more than 600 individuals." Docket 116 at 3. His risk of contracting COVID-19 within the correctional facility setting is eliminated because he is in home confinement. "In other words, the reasons offered for compassionate release have been satisfied, and no extraordinary or compelling reasons remain to justify releasing [Hansen] from the remaining time he is serving on [his sentence]." *United States v. Ogden*, 2020 WL 4015730, at *3 (D. Utah July 16, 2020); *see also United States v. Tagliaferri*, 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019) (stating "although [defendant's] request for compassionate release is not technically 'moot' as a legal matter," defendant's transfer into home confinement "obviated the need for granting him" compassionate relief based on his deteriorating health condition).

Even assuming Hansen's circumstances constituted "extraordinary and compelling reasons warrant[ing] such a reduction" under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors in § 3553(a) do not weigh in favor of a reduction. The original sentence was chosen with care, considering Hansen's and his community's needs and all of the other applicable sentencing factors.

7

Thus, the court finds that Hansen's sentence of 108 months in custody followed by 3 years of supervised release continues to be appropriate for the seriousness of the crimes to which he was found guilty.

## CONCLUSION

Hansen has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion to reinstate compassionate release (Docket 124) is denied.

Dated September 22, 2020.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE